**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PURPLE INNOVATION, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PHOTON INTERACTIVE UK LIMITED, a United Kingdom private limited company,<br><br>Defendant. | C.A. No. _____ |

## COMPLAINT

Plaintiff Purple Innovation, LLC ("Plaintiff" or "Purple"), by and through its undersigned counsel, brings this action against Defendant Photon Interactive UK Limited ("Defendant" or "Photon") and alleges as follows:

## NATURE OF THE ACTION

1. Purple, a leading manufacturer of comfort products including mattresses, pillows, sheets, bed frames and seat cushions, hired Photon to develop a website that could handle its exploding direct-to-consumer ecommerce business.

2. Despite being paid $862,020 by Purple to develop a functioning website for desktop, mobile and tablet devices, Photon failed to deliver.

3. By this action Purple seeks compensatory damages and indemnification.

## PARTIES

4. Plaintiff is a Delaware limited liability company with its principal place of business at 4100 North Chapel Ridge Rd, Suite 100, Lehi, Utah 84043.

5. Defendant is a United Kingdom private limited company with its principal place of business at Devonshire House, 60 Goswell Road, London, United Kingdom, EC1M 7AD.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.

7. This court has personal jurisdiction over Defendant because Defendant has consented to this Court's jurisdiction by way of a forum selection clause in the contract at issue in this case. *See* Master Professional Services Agreement, attached hereto as Exhibit A, at § 10.1 ("Any action or proceeding arising from or relating to this Agreement shall be brought in the federal courts of the State of Delaware.  Each Party hereby irrevocably consents to the exclusive jurisdiction and venue of such courts.")

8. This Court's exercise of personal jurisdiction over Defendant is consistent with the Constitution of the United States.

9. Venue is proper in this Judicial District under 28 U.S.C. § 1391.

## BACKGROUND

10. Purple is an innovative and successful comfort technology company that has grown quickly and exponentially since its inception.

11. Since launching its first mattress product, for which it is now primarily known, Purple has grown from less than 50 employees in January 2016 to at least 2,200 employees in January 2022.

12. Ecommerce is a significant aspect of Purple's marketing strategy and sales. In fact, a majority of Purple's sales to customers are initiated and/or completed online.

13. Purple's website typically gets 110,000 impressions per day, and its conversion rates have nearly doubled since 2019.

14. Due to its tremendous growth, Purple has quickly outgrown the website and ecommerce platform it started with.

15. On or around November 1, 2019, Purple and Photon entered into a Master Professional Services Agreement (the "MPSA"). *See* Exhibit A.

16. Purple entered the MPSA, among other things, due to Photon's extensive expertise in Commercetools, an online commerce platform through which Purple manages and offers its products for sale.

17. Pursuant to the MPSA, Photon agreed to "use commercially reasonable efforts to perform the Services and deliver the Deliverables [as defined therein] in substantial accordance with the specifications and time schedule set forth in the applicable Statement of Work." (*Id.* at § 2.)

18. Pursuant to the MPSA, Photon also agreed to indemnify Purple for any losses stemming from "the breach of any of [Photon's] representations and warranties set forth in [the Agreement" and/or from "the breach or default in the performance of any of the covenants or obligations that Photon is required to perform in connection with the Agreement." (*Id.* at § 5.2.)

19. On or around November 1, 2019, and pursuant to the MPSA, Purple and Photon executed a Scope of Work ("Scope of Work") outlining the specific scope of services and work to be provided by Photon under the MPSA.

20. Phase I, labeled the "Development" phase, included developing Plaintiff's platform on Commercetools, including front end development, service integration and end to end testing of the responsive website. (*Id.* at §2.)

21. Services included in the Scope of Work were explicitly defined as: project management; business requirements; user interface development; technical requirements; architecture and design; software development; quality assurance; automated testing; and configuration and release management. (*Id.* at § 2.2.)

22. Additionally, Photon agreed to provide "post-production warranty support as per the terms agreed in the [Agreement]." *See id.*

23. In short, Purple was promised a fully "responsive website for Desktop, Mobile and Tablet," which would be "designed in a way that maximizes performance, scalability and security; and developed in accordance with platform standards and easily modifiable." (*See id.* at § 5.1.)

24. On or around June 26, 2020, Purple and Photon executed a Change Request in accordance with the terms and conditions in the Agreement ("Change Request").

25. The Change Request incorporates numerous changes to the Statement of Work, consisting of various modifications to the Commercetool platform prior to launch. (*See id.*)

26. On or around August 12, 2020, Purple and Photon executed a third Scope of Work (the "Third SOW"), whereby Photon agreed to "Lift and Shift" Purple's business website from its existing CRM to a third party CRM platform, Drupal.

27. The MPSA, Scope of Work, Third SOW, and Change Request are hereinafter collectively referred to as the "Agreement."

28. Despite Photon's contractual obligations, Photon never produced complete, functioning Deliverables and did not provide the scope of Services contracted for.

29. After receiving each set of Deliverables, Purple timely notified Photon of the flaws therein, but Photon failed or refused to address or remedy the flaws.

4

30. The problems Purple experienced were numerous and include, but are not limited to, the following:

    a. Failure to assign a domestic architect to manage Purple's project and interface with Purple.

    b. Failure to use SASS to optimize CSS as dictated by industry best practices.

    c. Failure to build the platform to specifications which resulted in an inability to sustain more than 30% of web traffic.

    d. Constant bugs and performance issues.

    e. User experience and user interface issues.

    f. Failure to provide adequate documentation.

    g. Poor monitoring resulting in slow trouble shooting and lingering performance problems.

    h. Payment processing bugs, including charging customers twice for the same order and failing to reflect the proper card charge on other orders.

    i. Security vulnerabilities leaving the website exposed to threats.

31. After careful examination of the Deliverables, Purple ultimately determined they were unsalvageable, as, upon information and belief, Photon merely repurposed existing code instead of drafting new code tailored to Purple's project.

32. As a result, the architecture of the code is fundamentally flawed and Purple was required to begin development again from scratch.

33. Purple has paid Photon a total of $862,020 for unusable Deliverables and insufficient Services.

34. Despite Purple putting Photon on notice repeatedly of the failures in the Deliverables and Services, Photon failed and/or refused to address them in any satisfactory way.

35. As the result of Photon's failures, Purple was required to retain a separate development company to build the Deliverables anew. To date, Purple has expended $1,522,261 toward the rebuild to date.

36. As of the date of the filing of this Complaint, Photon has failed and refused to compensate Purple for the losses it sustain in connection with Photon's failure to deliver on its obligations under the Agreement.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

37. Purple hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

38. The Agreement constitutes a valid and binding contract between Purple and Photon.

39. At all times, Purple complied with its obligations under the Agreement or was otherwise excused from performance as the result of Photon's breach.

40. Photon materially breached the Agreement by, including but not limited to, failing to create a functioning commerce platform for Purple—i.e., provide functional Deliverables—and failing to provide the Services contracted for in the Agreement.

41. As a proximate result of Photon's breaches, Purple has been harmed and/or damaged in a manner and amount to be determined, but not less than $862,020.

42. Purple is entitled to an award of damages against Photon in an amount to be determined at trial, together with its reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
(Indemnity)

43. Purple hereby incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

44. The Agreement constitute a valid and binding contract between Purple and Photon.

45. Pursuant to the MPSA, Photon agreed to indemnify, defend, and hold Purple harmless for any losses stemming from "the breach of any of [Photon's] representations and warranties set forth in [the Agreement" and/or from "the breach or default in the performance of any of the covenants or obligations that Photon is required to perform in connection with the Agreement." Exhibit A at § 5.2.

46. Due to Photon's breach of the Agreement and its representations thereunder, Purple has sustained significant monetary loss in an amount to be determined, but not less than $1,522,261 which is has had to pay to a third party to rebuild the Deliverables for Purple's use.

47. Photon has failed and refused to comply with this indemnity obligations to compensate Purple for its loss.

48. Purple is entitled to an award of damages against Photon in an amount to be determined at trial, together with its reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For entry of judgment and an award of damages as to breach of contract against Defendant in the amount of not less than $862,020 plus pre and post-judgment interest;

2. For entry of judgment and an award of damages as to breach of the implied

covenant of good faith and fair dealing against Defendant in the amount of not less than $862,020 plus pre and post-judgment interest;

3. For entry of judgment and an award of damages as to Defendant's indemnification obligations under the Agreement in the amount of not less than $1,522,261 plus pre and post-judgment interest;

4. For an award of Plaintiff's attorneys' fees and costs incurred herein as permitted by law; and

5. For such other and further relief as the Court deems just and equitable.

DATED: May 3, 2022

**FISH & RICHARDSON P.C.**

*/s/ Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
janderson@fr.com

*Attorneys for Plaintiff Purple Innovation, LLC*